[Cite as *In re S.W.*, 2019-Ohio-2068.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

IN RE:

    S.W.,

[CATHERINE WISE - APPELLANT]

CASE NO. 9-18-29

**O P I N I O N**

IN RE:

    J.W.,

[CATHERINE WISE - APPELLANT]

CASE NO. 9-18-30

**O P I N I O N**

**Appeals from Marion County Common Pleas Court
Family Division
Trial Court Nos. 2017 AB 0069 and 2017 AB 0068**

**Judgments Affirmed**

**Date of Decision:  May 28, 2019**

**APPEARANCES:**

    *Robert C. Nemo* **for Appellant**

    *Justin J. Kahle* **for Appellee**

Case Nos. 9-18-29 and 9-18-30

**WILLAMOWSKI, J.**

{¶1} Mother-appellant Catherine Wise ("Wise") appeals the judgments of the Family Division of the Marion County Court of Common Pleas, challenging the trial court's decision to award Marion County Children Services ("MCCS") with permanent custody of JW and SW. For the reasons set forth below, the judgments of the trial court are affirmed.

*Facts and Procedural History*

{¶2} Wise is the mother of two boys: JW and SW. Tr. 279. JW's father is Jeremiah Hamon ("Hamon"), but SW's paternity has not been established. Doc. A1, B1.[1] Tr. 153. MCCS initially filed a complaint on April 6, 2015. Doc. A51, B50. At this time, Hamon and Wise tested positive for THC. Doc. A51, B50. Tr. 196. Wise had allegedly been blowing marijuana smoke into JW's face. Tr. 196. For this reason, JW was examined and tested positive for THC at the age of two and a half. Doc. A51, B50. Tr. 196. Another issue was the condition of Wise's home, which had animal feces on the floor and several unsafe conditions. Tr. 155, 187. On July 15, 2015, SW and JW were adjudicated dependent and were given a kinship placement with Patricia Morris ("Morris"). Tr. 154. The children remained with Morris until she passed away on January 6, 2017. Doc. A51, B50. Tr. 156.

---

[1] Since there are two cases in this appeal, the documents from the docket of case 17-AB-68, *In re JW*, will be identified by placing the letter "A" in front of a document's docket number. The documents from the docket of case 17-AB-69, *In re SW*, will be identified by placing the letter "B" in front of a document's docket number.

-2-

{¶3} At this point, JW and SW went into the custody of MCCS. Tr. 156. On January 9, 2017, MCCS placed the children into the care of foster parents Brittany and Tyler Holten (collectively "the Holtens"). Tr. 156. On April 6, 2017, this case was dismissed and refiled. Doc. A1, B1. Tr. 193. On May 10, 2017, the trial court issued an order for temporary custody of JW and SW to remain with MCCS. Doc. A5, B6. JW and SW were adjudicated dependent on June 12, 2017. Doc. A7, B8. On July 5, 2018, MCCS filed a motion for permanent custody for SW and JW. Doc. A29, B30.

{¶4} By July of 2018, SW had been continuously in the care of the Holtens since January of 2017. Tr. 219. JW had been in the care of the Holtens since January of 2017 with the exception of two weeks in the fall of 2017 when he returned to the custody of MCCS. Tr. 219-220. JW's father, Jeremiah Hamon ("Hamon") was incarcerated at the time that the motion for permanent custody was filed. Doc. 21. Since Hamon was incarcerated, the assistant prosecutor for MCCS filed a motion that requested approval from the trial court to serve the notice of hearing on Hamon at the Madison Correctional Institution by certified mail pursuant to R.C. 2151.29. Doc. 31. The trial court granted this motion for "good cause shown." Doc. 34. The notice of hearing was then sent by certified mail to Hamon at the Madison Correctional Institution. Doc. 35.

{¶5} On July 24, 2018, the trial court held the permanent custody hearing. Tr. 28. At this hearing, Sarah Fitzgerald ("Fitzgerald"), who works as a caseworker

-3-

at MCCS, testified about the case plan that was put together for Wise. Tr. 220. The main concerns of MCCS were that Wise had been unable to remain self-sufficient and had not maintained suitable housing for an extended period of time. Tr. 229, 232. Fitzgerald mentioned that Wise was able to maintain an income through social security benefits in between December of 2017 and May of 2018. Tr. 232. However, Fitzgerald stated that Wise's current living situation did not provide an acceptable environment for children. Tr. 232.

{¶6} Fitzgerald testified that Wise had moved into the home of a friend, Bryan Poe ("Poe"). Tr. 231-233. She stated that Wise then sought section eight housing in September or October of 2017 but, after her application had been denied, decided to pay to have Poe's house remodeled in order to make his residence suitable for children. Tr. 233, 269. Fitzgerald went into the house in June of 2018 and found that there were numerous unsafe conditions in the house. Tr. 233. Fitzgerald testified that the subfloor was exposed; there was exposed wiring; the rooms were cluttered; there was a lack of furniture; there were cleaning supplies sitting out; there were cat feces strewn around a litter box; there was broken drywall in some rooms and unfinished drywall in other rooms. Tr. 241-242, 244.

{¶7} Justin Plummer ("Plummer"), who works as a therapist for Ohio GuideStone, testified that he worked with JW and with Wise. Tr. 52, 59. He stated that JW initially had some compliance issues, tantrums, and disturbed sleep. Tr. 49-50. Plummer said that JW's behaviors improved through the course of therapy,

-4-

though there were periods of regression. Tr. 50, 53. He testified that the Holtens were helping to reinforce his work through their parenting style. Tr. 57. Brittany Holten then testified about JW's behavior since he had been placed in their home and said that she and her husband would be willing to adopt JW and SW. Tr. 117, 127.

{¶8} Jackie Hamilton ("Hamilton"), who is employed as a caseworker for MCCS, worked with Wise and tried to assist her in achieving the goals of Wise's case plan. Tr. 153, 158. Hamilton stated that Wise was "hit and miss" with the tasks she was supposed to be completing for her case plan. Tr. 160. Wise had completed some assessments, but failed to keep appointments, did not complete other tasks, and did not follow through with counseling. Tr. 160, 188. Hamilton also stated that Wise struggled to pay bills and, on at least one occasion, admitted to relapsing into marijuana usage. Tr. 176, 185. Hamilton also testified that Wise stopped cooperating with MCCS in between January and May of 2016 and that she had no contact with Wise during this time. Tr. 195-196. During this time, Wise's living situation had improved to the point that the housing issues were marked as resolved, but Hamilton testified that Wise regressed within a couple of months. Tr. 187-188, 199. Hamilton also stated that Wise did not attend visitation consistently while she was working with Wise. Tr. 192.

{¶9} Wise testified that she had been living with a friend, Bryan Poe ("Poe"), for roughly two years, though she stated that she had been in a homeless shelter for

a brief time within this period. Tr. 291. She admitted that she was not permitted to stay at the homeless shelter and that her applications for apartments had been denied. Tr. 285. She testified that she had been paying to renovate Poe's home, though she did not have an ownership interest in the residence at that time. Tr. 302-303. She claimed that the renovations on Poe's house would be done by the end of the month. Tr. 286. She also testified that she had not used marijuana in two years and four months. Tr. 296.

{¶10} On September 13, 2018, the trial court ordered that JW and SW be placed in the permanent custody of MCCS. Doc. A51. Wise filed her notice of appeal on October 1, 2018. Doc. A60. On appeal, she raises the following five assignments of error:

### First Assignment of Error

**The trial court lacked jurisdiction due to failure to properly serve [JW]'s father with notice of the permanent custody hearing.**

### Second Assignment of Error

**The trial court committed prejudicial error when it found that appellant's children had been in temporary custody of appellee for twelve or more months of a consecutive twenty-two month period pursuant to R.C. 2151.414(B).**

### Third Assignment of Error

**The trial court committed prejudicial error by finding that it was in the best interest of the children to be placed in the permanent custody of appellee.**

**Fourth Assignment of Error**

**The trial court committed prejudicial error in finding that appellant failed continuously and repeatedly to substantially remedy the problems that caused the condition resulting in the children remaining in appellee's custody and that appellant failed to work with appellee to achieve the goals and objectives of the case plan.**

**Fifth Assignment of Error**

**The appellant was denied her right to effective assistance of counsel, who failed to object on multiple occasions to hearsay evidence.**

*First Assignment of Error*

{¶11} Appellant argues that the trial court did not have jurisdiction over this matter because JW's father, Hamon, was not properly served.

Legal Standard

{¶12} After a motion for permanent custody has been filed, the trial court is to "schedule a hearing and give notice of the filing of the motion and of the hearing, in accordance with section 2151.29 of the Revised Code, to all parties to the action and to the child's guardian ad litem." R.C. 2151.414(A)(1). R.C. 2151.29 reads, in its relevant part, as follows:

> **Service of summons, notices, and subpoenas * * * shall be made by delivering a copy to the person summoned, notified, or subpoenaed, or by leaving a copy at the person's usual place of residence. If the juvenile judge is satisfied that such service is impracticable, the juvenile judge may order service by registered or certified mail.**

R.C. 2151.29.

> **The notice requirement of R.C. 2151.414(A) ensures that the juvenile court has personal jurisdiction over the parents.** *In re Kincaid*, **4th Dist. No. 00CA3, 2000 WL 1683456, \*4 (Oct. 27, 2000). Unlike subject matter jurisdiction, the issue of personal jurisdiction is forfeited without timely objection.** *In re J.P.*, **9th Dist. No. 23937, 2008-Ohio-2157, ¶ 7. Whether the alleged fathers were properly served, therefore, raises an issue of personal, rather than subject matter jurisdiction.** *See In re M.M.*, **8th Dist. No. 79947, 2002 WL 207610, \*5 (Feb. 7, 2002). Ordinarily such an issue would be personal to them, and Mother may not raise it.** *See id*.

*In re A.M.*, 9th Dist. Summit No. 26141, 2012-Ohio-1024, ¶ 13.

{¶13} In Ohio, "an appeal lies only on behalf of a party aggrieved." *In re Guardianship of Love*, 19 Ohio St.2d 111, 113, 249 N.E.2d 794, 795 (1969). An appellant

> **"must be able to show that he has a present interest in the subject matter of the litigation and that he has been prejudiced by the judgment of the lower court." One may not challenge an alleged error committed against a non-appealing party absent a showing that the challenger has been prejudiced by the alleged error.**

*In re Sherman*, 3d Dist. Hancock Nos. 5-06-21, 5-06-22, and 5-06-23, 2006-Ohio-6485, ¶ 8, quoting *In re D.H.*, 8th Dist. Cuyahoga No. 82533, 2003-Ohio-6478, ¶ 7, quoting *In re Guardianship of Love* at 113.

{¶14} Thus, "an appellant-mother may challenge an alleged service error regarding a non-appealing party only when she has demonstrated that she herself has been prejudiced by the alleged error." *Matter of G.C.J.*, 11th Dist. Portage Nos. 2018-P-0071, 2018-P-0072, 2018-P-0074, and 2018-P-0075, 2019-Ohio-185, ¶ 33. If the appellant fails to demonstrate she was "actually prejudiced," "a mere assertion

that a purported father was not properly served is an insufficient basis upon which to award standing to the appellant-mother to raise such error." *In re A.M.*, 2012-Ohio-1024, at ¶ 18, citing *In re L.A.*, 9th Dist. Summit No. 21531, 2003-Ohio-4790, ¶ 56.

Legal Analysis

**{¶15}** In this case, Wise does not allege that she did not receive proper notice of hearing. Rather, she argues that Hamon, who is not a party to this appeal, received defective notice. If Wise believed that Hamon's receipt of proper notice "was necessary to avoid prejudice to her parental rights, she could have proffered her position at the hearing." *Matter of G.C.J.*, ¶ 34. However, she did not raise this issue before the trial court. Further, on appeal, Wise has not demonstrated how she was prejudiced by the alleged failure of the trial court to ensure that Hamon was properly served with notice of hearing. *See In re Villa*, 3d Dist. Marion No. 9-01-21, 2001 WL 1300763, *3 (Oct. 26, 2001). Thus, she does not have standing to challenge whether Hamon received proper notice. *Id.* We, therefore, decline to reach the issue of whether Hamon was properly served with notice. *Matter of Cook*, 3d Dist. Hancock No. 5-98-16, 1998 WL 719524, *6 (Oct. 8, 1998). For these reasons, Wise's first assignment of error is overruled.

*Second Assignment of Error*

**{¶16}** Wise claims that the trial court did not follow R.C. 2151.414(B)(1)(d) in the process of making an award of permanent custody. The legal standard set forth below will govern the second, third, and fourth assignments of error.

Legal Standard

**{¶17}** "The United States Supreme Court has stated that the right to raise one's children is an 'essential' and 'basic civil right.'" *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), citing *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). "Parents have a 'fundamental liberty interest' in the care, custody, and management of the child." *Id.*, citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982). However, "it is plain that the natural rights of a parent are not absolute, but are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed." *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

**{¶18}** "R.C. 2151.413 permits an agency that has been granted temporary custody of a child who is not abandoned or orphaned to move for permanent custody." *In re Leveck*, 3d Dist. Hancock Nos. 5-02-52, 5-02-53, and 5-02-54, 2003-Ohio-1269, ¶ 8. "When considering a motion for permanent custody of a child, the trial court must comply with the statutory requirements set forth in R.C. 2151.414." *In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 13. R.C. 2151.414(B)(1) reads, in its relevant part, as follows:

**(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:**

**(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.**

**\* \* \***

**(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period \* \* \*.**

R.C. 2151.414(B)(1).  Thus,

**[b]ased on the statute, there are two steps to the analysis in determining a permanent custody motion. First a court must determine which, if any, of the factors in R.C. 2151.414(B)(1) are present. Second, if one of the factors in R.C. 2151.414(B)(1) is present, the court must determine if granting permanent custody to the agency is in the children's best interests.**

*In re I.G.*, 3d Dist. Marion Nos. 9-13-43, 9-13-44, 9-13-45, 2014-Ohio-1136, ¶ 28,

citing R.C. 2151.414(B)(1).

{¶19} Regarding the first step, "the findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, [and] each is independently sufficient to use as a basis to grant the Agency's motion for permanent custody." *In re A.M.*, 2015-Ohio-2740, at ¶ 14, quoting *In re M.R.*, 3d Dist. Defiance No. 4-12-18, 2013-Ohio-1302, ¶ 80. R.C. 2151.414(B)(1)(a) provides grounds for a grant of permanent custody when (1) "[t]he child * * * has *not* been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period * * * [2] *and* the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." (Emphasis added.) R.C. 2151.414(B)(1)(a). The trial court must consider the factors set forth R.C. 2151.414(E) in order to determine "whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents * * *." R.C. 2151.414(E).

> **If one or more of the factors enumerated in R.C. 2151.414(E) is found to be present by clear and convincing evidence, the trial court shall find that the child cannot be placed with the parents within a reasonable period of time or should not be placed with the parents.**

*In re A.F.*, 3d Dist. Marion No. 9-11-27, 2012-Ohio-1137, ¶ 54.

{¶20} R.C. 2151.414(B)(1)(d), however, governs situations in which a trial court is considering a motion for permanent custody and "[t]he child has been in the temporary custody of one or more public children services * * * for twelve or more months of a consecutive twenty-two-month period." R.C. 2151.414(B)(1)(d).

> **For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.**

R.C. 2151.414(B)(1)(e). Further, "the time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count toward the 12-month period set forth in R.C. 2151.414(B)(1)(d)." *Id.* at ¶ 26. "Under the plain language of R.C. 2151.414(B)(1)(d), when a child has been in an agency's temporary custody for 12 or more months of a consecutive 22-month period, a trial court need not find that the child cannot be placed with either parent within a reasonable time or should not be placed with the parents." *In re A.M.*, 2015-Ohio-2740, at ¶ 14.

{¶21} "If the trial court determines that *any* provision enumerated in R.C. 2151.414(B)(1) applies," the trial court proceeds to the second step of this analysis and "must determine, by clear and convincing evidence, whether granting the agency permanent custody of the child is in the child's best interest." (Emphasis sic.) *In re A.F.* at ¶ 55. R.C. 2151.414(D)(1) provides a nonexclusive list of factors for a trial court to consider in determining whether an order of permanent custody is in the child's best interests and reads, in its relevant part, as follows:

> **[T]he court shall consider all relevant factors, including, but not limited to, the following:**
>
> **(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-**

**home providers, and any other person who may significantly affect the child;**

**(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;**

**(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;**

**(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;**

**(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.**

R.C. 2151.414(D)(1).

**Upon review, an appellate court 'must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof.' 'A reviewing court will not reverse a trial court's determination unless it is not supported by clear and convincing evidence.'**

(Citations omitted.)  *In re A.M*., 2015-Ohio-2740, at ¶ 16, quoting *In re H.M.K*., 3d

Dist. Wyandot Nos. 16-12-15 and 16-12-16, 2013-Ohio-4317, ¶ 43.

**Clear and convincing evidence is more than a preponderance of the evidence but not as much evidence as required to establish guilt beyond a reasonable doubt as in a criminal case; rather, it is evidence which provides the trier of fact with a firm belief or conviction as to the facts sought to be established.**

*Id*., quoting *In re H.M.K*., at ¶ 42.

Legal Analysis

**{¶22}** Wise argues that the first step required under R.C. 2151.414(B)(1)(d) was not satisfied because "the record * * * did not reflect that the children had been with appellee the entire 'consecutive' previous twenty-two months." Appellant's Brief, 14. However, a plain reading of R.C. 2151.414(B)(1)(d) does not require JW and SW to have been with MCCS for twenty-two consecutive months in order for permanent custody to be granted. The statute requires that the children were "in the temporary custody of one or more public children services agencies * * * for *twelve* or more months of a consecutive twenty-two-month period." (Emphasis added.) R.C. 2151.414(B)(1)(d).

**{¶23}** In this case, JW and SW were adjudicated as dependent children on June 12, 2017, and MCCS filed a motion for permanent custody on July 5, 2018. Doc. A7, A29, B8, B30. The record shows that JW and SW were in the temporary custody of MCCS or the Holtens continuously in between the date of adjudication and the date on which MCCS filed for permanent custody.[2] Tr. 116, 159, 219-220.

---

[2] After Morris passed away in January of 2017, JW and SW were taken into the custody of the agency sometime thereafter, the exact date thereof not being contained in the record. Doc. A51, B50. Tr. 156. However, these prior cases were dismissed on April 6, 2017, which is the same date that the cases before us were filed. Doc. A51, B50. Prior to this date, JW and SW had been removed from their home and placed into the custody of the agency. Doc. A51, B50. Thus, the dockets for cases 17-AB-00068 and 17-AB-00069 do not contain the relevant trial court orders from January of 2017. As we have the date on which JW and SW were adjudicated as dependent children in the dockets before this Court and this is the later of the two dates set forth in R.C. 2151.414(B)(1)(e), we opt to use the date of adjudication to determine whether the time requirements of R.C. 2151.414(B)(1)(d) have been satisfied. The record shows that JW and SW spent more than twelve months in between the June 12, 2017 adjudication and the July 5, 2018 motion for permanent custody in the temporary custody of MCCS. Since JW and SW were removed from their home more than sixty days prior to the date that they were adjudicated as dependent children, the time requirements

Thus, JW and SW were in the temporary custody of MCCS for more than twelve months in between June 12, 2017 and July 5, 2018. Doc. A7, A29, B8, B30.[3] This satisfies the time requirements of R.C. 2151.414(B)(1)(d). For this reason, Wise's second assignment of error is overruled.

*Third Assignment of Error*

{¶24} Wise asserts that the second step required by R.C. 2151.414(B)(1) has not been satisfied, arguing that an order of permanent custody is not in JW or SW's best interest.

Legal Standard

{¶25} We herein reincorporate the legal standard set forth under appellant's second assignment of error.

Legal Analysis

{¶26} In this case, the trial court found that a grant of permanent custody to MCCS was in the best interests of JW and SW. Doc. A51, B50. At the hearing, the

---

of R.C. 2151.414(B)(1)(d) are satisfied even when using the later of the two dates listed in R.C. 2151.414(B)(1).

[3] There is currently a case pending before the Supreme Court of Ohio that addresses a certified conflict regarding the calculation of time under R.C. 2151.414(B)(1)(d). *In re N.M.P.*, 154 Ohio St.3d 1519, 2019-Ohio-768, 118 N.E.3d 257. The Eleventh District has ruled that R.C. 2151.414(B)(1)(d) requires that a child be in the temporary custody of a child services agency for twelve of the twenty-two months preceding the filing of a motion for permanent custody. *In re N.M.P.*, 11th Dist. Portage No. 2018-P-0056, 2018-Ohio-5072. The Sixth District, on the other hand, has ruled that R.C. 2151.414(B)(1)(d) requires that an agency has been involved with a child for twenty-two consecutive months and that the child has spent twelve of these twenty-two consecutive months in the temporary custody of the child services agency. *In re K.L.*, 6th Dist. Lucas Nos. L-17-1201 and L-17-1210, 2017-Ohio-9003. However, in our case, MCCS first became involved in this matter on April 6, 2015. Doc. A51, B50. The motion for permanent custody was filed on July 5, 2018. Doc. A51, B50. Thus, MCCS was involved for more than twenty-two consecutive months with JW and SW. For this reason, we do not anticipate that *In re N.M.P* will have an impact on our determination in the case presently before us.

trial court heard testimony from Brittany Holten regarding the relationship that JW and SW had with her family. Tr. 117, 123. *See* R.C. 2151.414(D)(1)(a). Holten testified that SW and JW have formed positive relationships with her children and have bonded with her husband. Tr. 121, 126. She also stated that she and her husband were willing to adopt SW and JW. Tr. 127.

{¶27} R.C. 2151.414(D)(1)(b) directs the trial court to consider the "wishes of the child * * * with due regard for the maturity of the child." R.C. 2151.414(D)(1)(b). In this case, the guardian ad litem's report noted the young ages of the children in its section on the limited interview conducted with SW and JW. Doc. A20, B21. Given the young ages of the children, there was no evidence as to this factor.

{¶28} The trial court also heard testimony regarding the custodial history of JW and SW. *See* R.C. 2151.414(D)(1)(c). JW and SW had been in the custody of a kinship caregiver from January 2016 through January 2017. Tr. 154, 156. MCCS was unable to obtain other kinship names from Hamon or Wise as options for placement. Tr. 195, 252. In January 2017, MCCS took custody of JW and SW, placing them in the care of Holten. Tr. 159. At the hearing, Holten testified that JW and SW had been in her care since January of 2017 with the exception of two weeks where JW returned to the care of MCCS. Tr. 116, 159, 219.

{¶29} JW and SW's guardian ad litem also filed a report concluding that a grant of permanent custody to MCCS would be in the children's best interests. Doc.

A20, B21. The report stated that the Holtens provided JW and SW with the "structure that they desperately need as both boys have significant behavioral and learning challenges." Doc. A20, B21. The trial court also heard testimony that JW and SW needed a stable home environment. However, the testimony at the hearing indicated that Catherine was having difficulty in providing this kind of environment as she was struggling to remain self-sufficient and consistent in her obligations. Tr. 112, 192, 229, 253. *See* R.C. 2151.414(D)(1)(d).

{¶30} Further, while R.C. 2151.414(D)(1)(e) might be applicable to JW's father, who was incarcerated at the time of the hearing, Hamon is not a party to this appeal. Thus, R.C. 2151.414(D)(1)(e) does not appear to be applicable to Wise, who is the appellant.

{¶31} The record indicates that the trial court considered the facts of this case under the factors listed in R.C. 2151.414(D). Thus, after reviewing the record, we conclude that the trial court's determination was supported by sufficient evidence. For this reason, Wise's third assignment of error is overruled.

*Fourth Assignment of Error*

{¶32} Wise argues that the trial court erred by making a finding that the factor listed in R.C. 2151.414(E)(1) was present in this case.

Legal Standard

{¶33} We herein reincorporate the legal standard set forth under appellant's second assignment of error.

Legal Analysis

**{¶34}** In its judgment entry, the trial court found that a factor listed in 2151.414(E)(1) applied in this case. Doc. A51, B50. On appeal, Wise argues that the trial court erred in making this finding. This R.C. 2151.414(E)(1) finding would be necessary to support an award of permanent custody made pursuant to R.C. 2151.414(B)(1)(a). However, in this case, the trial court awarded permanent custody of JW and SW to MCCS pursuant to R.C. 2151.414(B)(1)(d), finding that JW and SW had been in the temporary custody of MCCS "for twelve or more consecutive months of twenty-two month period." Doc. A51, B50. Unlike R.C. 2151.414(B)(1)(a), R.C. 2151.414(B)(1)(d) does not require the trial court to find that one of the R.C. 2151.414(E) factors applies in order to make an award of permanent custody. *See* R.C. 2151.414(B)(1)(a).

**{¶35}** Under the second assignment of error, we concluded that R.C. 2151.414(B)(1)(d) provided an appropriate basis for the trial court to award permanent custody to MCCS. Thus, even if the trial court erred in finding that the R.C. 2151.414(E)(1) factor applies in this case, this finding was not necessary for the trial court to make a proper award of permanent custody pursuant to R.C. 2151.414(B)(1)(d). For this reason, the question of whether the trial court's finding under R.C. 2151.414(E)(1) was appropriate is moot. Thus, this court declines to address the substance of this challenge pursuant to App.R. 12(A)(1)(c).

*Fifth Assignment of Error*

**{¶36}** Wise argues that she was denied her right to the effective assistance of counsel in this case. Specifically, Wise alleges that her attorney failed to object to several hearsay statements.

Legal Standard

**{¶37}** "In permanent custody proceedings, where parents face losing their children, we apply the same test as the test for ineffective assistance of counsel in criminal cases." *In re E.C.*, 3d Dist. Hancock No. 5-15-01, 2015-Ohio-2211, ¶ 40. "Under Ohio law, 'a properly licensed attorney is presumed to carry out his duties in a competent manner.'" *State v. Beaver*, 3d Dist. Marion No. 9-17-37, 2018-Ohio-2438, ¶ 40, quoting *State v. Gee*, 3d Dist. Putnam No. 12-92-9, 1993 WL 270995 (July 22, 1993). "In order to prove an ineffective assistance of counsel claim, the appellant must carry the burden of establishing (1) that his or her counsel's performance was deficient and (2) that this deficient performance prejudiced the defendant." *In re C.N.*, 3d Dist. Hardin Nos. 6-17-16 and 6-17-23, 2018-Ohio-2442, ¶ 16, quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If the petitioner cannot prove one of these elements, "it [is] unnecessary for a court to consider the other prong of the test." *State v. Walker*, 2016-Ohio-3499, 66 N.E.3d 349, ¶ 20 (3d Dist.).

**{¶38}** "First, the petitioner must establish that 'counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel

was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *State v. Norville*, 3d Dist. Seneca No. 13-18-14, 2018-Ohio-4467, ¶ 26, quoting *Strickland* at 687. "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. "Counsel need not raise meritless issues or even all arguably meritorious issues." *State v. Mayse*, 3d Dist. Marion No. 9-16-50, 2017-Ohio-1483, ¶ 24. "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available." *State v. Conley*, 2015-Ohio-2553, 43 N.E.3d 775, ¶ 56 (2d Dist.), citing *State v. Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

**{¶39}** "Second, the petitioner needs to establish 'that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Norville* at ¶ 27, quoting *Strickland* at 687. "To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Conway* at ¶ 95. Appellate courts must determine from the record "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." *State v. Howton*, 3d Dist. Allen No. 1-16-35, 2017-Ohio-4349, ¶ 35, quoting *State v. Hester*, 45 Ohio St.2d 71, 341 N.E.2d 304 (1976), paragraph four of the syllabus.

Legal Analysis

**{¶40}** In this case, Wise alleges that her trial counsel failed to object to several hearsay statements that were made by Brittany Holten and Hamilton. However, "the failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel." *Conway, supra*, at ¶ 103. On numerous occasions, Wise's trial counsel objected on grounds of hearsay. Tr. 136, 214, 227, 231, 274, 277. Thus, the record does not support the conclusion that trial counsel "made errors so serious that [he] was not functioning as the 'counsel' guaranteed * * * by the Sixth Amendment." *Strickland, supra*, at 687. Even if we assume the statements identified by Wise on appeal constitute hearsay, the decision not to object to these statements appears, in the context of the hearing, to be a matter of trial strategy as trial counsel frequently objected elsewhere, citing hearsay as grounds. *Conley* at ¶ 56.

**{¶41}** Further, in bench trials, "[t]he trial court, as fact finder, is presumed to have considered only relevant, material, and competent evidence in arriving at its judgment unless the record shows affirmatively to the contrary." *In re Adoption of Linder*, 3d Dist. Paulding No. 11-04-07, 2004-Ohio-6962, ¶ 6. Thus, even if the statements identified by Wise are hearsay, there is no indication in the record that the trial court relied on these statements in reaching its decision. Finally, in her arguments, Wise has not demonstrated how the outcome of this hearing would have been different in the absence of these alleged errors on the part of her trial counsel.

Thus, Wise has not carried the burden of establishing that she was denied her right to the effective assistance of counsel.  For these reasons, Wise's fifth assignment of error is overruled.

*Conclusion*

{¶42} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgments of the Family Division of the Marion County Court of Common Pleas are affirmed.

***Judgments Affirmed***

**SHAW and PRESTON, J.J., concur.**

**/hls**