[Cite as *In re S.P.*, 2022-Ohio-576.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

IN RE:

    S.P.,                                     **CASE NO. 5-21-25**

NEGLECTED AND DEPENDENT CHILD.      **O P I N I O N**

[SARA S. - APPELLANT]

IN RE:

    B.P.,                                      **CASE NO. 5-21-26**

NEGLECTED AND DEPENDENT CHILD.      **O P I N I O N**

[SARA S. - APPELLANT]

**Appeals from Hancock County Common Pleas Court
Juvenile Division
Trial Court Nos. 20193055 and 20193054**

**Judgments Affirmed**

**Date of Decision:   February 28, 2022**

APPEARANCES:

    *Alison Boggs* **for Appellant**

    *Justin Kahle* **for Appellee**

Case Nos. 5-21-25 and 5-21-26

**SHAW, J.**

{¶1} Mother-Appellant, Sara S. ("Mother"), brings these appeals from the August 10, 2021 judgments of the Hancock County Common Pleas Court, Juvenile Division, granting the motions for permanent custody of her children, S.P. and B.P., filed by Hancock County Job and Family Services-Children's Protective Services Unit (the "Agency") and terminating her parental rights.[1]

*Relevant Facts and Procedural History*

{¶2} S.P. was born in 2014 and B.P. was born in 2017.[2] The record indicates the Agency first became involved with the family on May 6, 2019, when it received a report that Mother was arrested after law enforcement stopped a vehicle she was riding in along with her children. Mother had been searched and drugs and drug paraphernalia were found. As a result, the children were placed with their maternal grandmother under a safety plan. Mother later was convicted of possession of cocaine, trafficking in cocaine and failure to appear. Mother is on felony community control.

{¶3} On May 28, 2019, the Agency filed complaints alleging S.P. and B.P. were neglected and dependent children and emergency temporary custody was requested as an interim order. A shelter care hearing was held on June 5, 2019 and

---

[1] We note that Father consented to granting the Agency's motions for permanent custody; he is not a party to these appeals.
[2] Agency Ex. 5.

-2-

the Agency was granted emergency temporary custody of the children that day. The Agency continued placement of the children in the maternal grandmother's home and provided case planning services with a goal of reunification.

{¶4} On June 10, 2019, the trial court appointed a guardian ad litem for the two children.

{¶5} An adjudicatory hearing was held on July 25, 2019, wherein the trial court found the children were neglected and dependent children based upon an agreement of the parties. That same day, the children were removed from the maternal grandmother's home by the Agency due to no working refrigeration in the home, there were cockroaches, as well as other insects, the inability of the grandmother to get the children to medical appointments and to provide for their basic needs, and the fact that there was an unapproved person in the home. The children were placed in a foster home together.

{¶6} On August 15, 2019, the trial court held a dispositional hearing. Mother was not present, but she was represented by legal counsel. Based upon the testimony and evidence presented at the hearing, the trial court granted the Agency temporary custody.

{¶7} The Agency devised a case plan, with a goal of reunification, that included substance abuse and mental health treatment through Family Resource Center, domestic violence classes, and a referral for supervised visitation at

Harmony House. As part of the case plan's objectives, Mother needed to obtain safe and stable housing.

{¶8} Thereafter, on May 21, 2020, upon the agreement of all parties, the trial court granted a six-month extension of temporary custody. Mother was not present, but she was represented by legal counsel. Subsequently, the order of temporary custody was extended for an additional six-month period due to the father's significant progress on the case plan. Mother was not present at the hearing held on that extension, but she was represented by legal counsel. However, on May 11, 2021, the Agency filed motions for permanent custody of the children.

{¶9} On May 27, 2021, the trial court appointed counsel for the children.

{¶10} On August 3, 2021, the trial court held a hearing on the Agency's motions for permanent custody. At the hearing, the Agency presented the testimony of five witnesses: a records keeper from Family Resource Center who presented Mother's records from that agency, the Harmony House case manager regarding the records of Mother's supervised visitations with the children, the Agency ongoing caseworker assigned to the children's cases since February 2020, the Agency ongoing supervisor, and the guardian ad litem, along with her report, as evidence in support of their motions. In her report and in her testimony at the permanent custody hearing, the guardian ad litem recommended that permanent custody of the children be granted to the Agency.

{¶11} In two separate judgment entries (one for each child), filed August 10, 2021, the trial court granted the Agency's motions for permanent custody and terminated Mother's parental rights.

{¶12} Mother now appeals, asserting the following assignments of error for review:

**ASSIGNMENT OF ERROR NO. 1**

**THE TRIAL COURT'S DECISION GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AMOUNTED TO AN ABUSE OF DISCRETION.**

**ASSIGNMENT OF ERROR NO. 2**

**THE AGENCY FAILED TO USE REASONABLE EFFORTS TO REUNIFY [MOTHER] WITH HER DAUGHTER[S].**

**ASSIGNMENT OF ERROR NO. 3**

**THE AGENCY DID NOT PROVE BY CLEAR AND CONVINCING EVIDENCE THAT [MOTHER] ABANDONED HER CHILD[REN], AS CONTEMPLETED [SIC] BY THE STATUTE.**

*First and Third Assignments of Error*

{¶13} In her first assignment of error, Mother argues that the trial court's decision to grant the Agency's motions for permanent custody of the children is against the manifest weight of the evidence. Specifically, Mother argues that the trial court failed to give due consideration to the efforts she made on completing the case plan objectives and remedying the conditions that caused the removal of the

children. In her third assignment of error, Mother argues the Agency failed to prove by clear and convincing evidence that she abandoned her children. This Court will consider both assignments of error together.

*Standard of Review*

{¶14} Permanent custody determinations made under R.C. 2151.414 must be supported by clear and convincing evidence. *In re N.R.S.*, 3d Dist. Crawford Nos. 3-17-07, 3-17-08 and 3-17-09, 2018-Ohio-125, ¶ 16; *accord* R.C. 2151.414(B)(1). Clear and convincing evidence is evidence that " 'will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *In re C.H.*, 3d Dist. Mercer Nos. 10-19-10, 10-19-11, 10-19-12 and 10-19-13, 2020-Ohio-716, ¶ 61, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954).

{¶15} "In determining whether a trial court based its decision upon clear and convincing evidence, 'a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof.' " *In re R.R.*, 3d Dist. Logan No. 8-20-26, 2021-Ohio-1620, ¶ 50, quoting *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990).

{¶16} Moreover, when an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court " ' "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder

of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." ' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20 (citations omitted); *accord In re C.H.* at ¶ 64. Thus, a trial court's decision on terminating parental rights "will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the statutory elements for a termination of parental rights have been established." *In re N.R.S.* at ¶ 16, citing *In re Miajanigue W.*, 6th Dist. Lucas No. L-06-1088, 2006-Ohio-6295, ¶ 38, citing *In re Forest S.*, 102 Ohio App.3d 338, 344-345, *Cross v. Ledford*, 161 Ohio St. 469, paragraph three of the syllabus.

*Statutory Procedure*

{¶17} "R.C. 2151.414 outlines the procedures that protect the interests of parents and children in a permanent custody proceeding." *In re N.R.S.* at ¶ 12, citing *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, ¶ 26. Pursuant to R.C. 2151.414(B), a trial court is authorized to grant permanent custody of a child to the agency if the court finds, by clear and convincing evidence, that: (1) any of the circumstances in R.C. 2151.414(B)(1)(a) to (e) applies; and (2) permanent custody is in the best interest of the child under the factors enumerated in R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(D)(1); *see also In re X.S.*, 3d Dist. Mercer Nos. 10-20-09, 10-20-10, 10-20-11, 10-20-12 and 10-20-13, 2021-Ohio-1774, ¶ 22.

{¶**18**} R.C. 2151.414(B)(1) provides, in pertinent part, that a trial court

**may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:**

**(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.**

**(b) The child is abandoned.**

**\* \* \***

**(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and \* \* \* the child was previously in the temporary custody of an equivalent agency in another state.**

R.C. 2151.414(B)(1)(a), (b), (d).

*Analysis*

*(R.C. 2151.414)*

{¶19} Here, the Agency requested that the trial court grant it permanent custody on the basis that the children had been in its temporary custody for twelve or more months of a consecutive twenty-two-month period pursuant to R.C. 2151.414(B)(1)(d). However, the trial court determined that R.C. 2151.414(B)(1)(a), (b), and (d) were applicable to the instant case for the trial court to grant permanent custody. R.C. 2151.414(B)(1)(a) provides grounds for a grant of permanent custody when (1) "[t]he child * * * has *not* been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period * * * [2] *and* the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." (Emphasis added.) R.C. 2151.414(B)(1)(a). R.C. 2151.414(B)(1)(d), however, governs situations in which a trial court is considering a motion for permanent custody and "[t]he child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period." R.C. 2151.414(B)(1)(d). " '[T]he findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, [and] each is independently sufficient to use as a basis to grant the Agency's motion for permanent custody.' " *In re S.W.*, 3d Dist. Marion Nos. 9-18-

29 and 9-18-30, 2019-Ohio-2068, ¶ 19, quoting *In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 14.

{¶20} Because it is dispositive, we will only address the trial court's determination under R.C. 2151.414(B)(1)(d), the time requirements of the "12 of 22" ground. *See In re E.B.*, 3d Dist. Hancock Nos. 5-21-09 and 5-21-10, 2021-Ohio-3641, ¶ 20 (finding dispositive trial court's determination under R.C. 2151.414(B)(1)(d)). "Under the plain language of R.C. 2151.414(B)(1)(d), when a child has been in an agency's temporary custody for 12 or more months of a consecutive 22-month period, a trial court *need not* find that the child cannot be placed with either parent within a reasonable time or should not be placed with the parents." *Id.* citing *In re I.G.*, 3d Dist. Marion Nos. 9-13-43, 9-13-44, and 9-13-45, 2014-Ohio-1136, ¶ 30, citing R.C. 2151.414(B)(1)(d) and comparing it with R.C. 2151.414(B)(1)(a); *In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 14, citing *In re I.G.* at ¶ 30, citing R.C. 2151.414(B)(1)(d).

{¶21} Importantly, the children had been in the temporary custody of the Agency continuously since July 25, 2019. As of the date the Agency filed its motions for permanent custody on May 11, 2021, the children had been in the temporary custody of the Agency for about twenty-two months. Thus, the record is clear that the children were in the temporary custody of the Agency for more than twelve months of the last twenty-two months when the permanent custody motions

were filed. Accordingly, based on the record in this case and because it is dispositive, we conclude that the trial court's determination under R.C. 2151.414(B)(1)(d) is sufficient to satisfy the first part of the permanent-custody analysis, and under the evidence set forth in the record, such determination is not against the manifest weight of the evidence.

*(Best Interest)*

{¶22} Under the second part of the analysis, the best interest of the child, R.C. 2151.414(D)(1) mandates that the trial court consider the factors listed in this statute, as well as all other relevant factors. *In re X.S.,* 3d Dist. Mercer Nos. 10-20-09, 10-20-10, 10-20-11, 10-20-12 and 10-20-13, 2021-Ohio-1774, at ¶ 22, citing *In re N.R.S.,* 3d Dist. Crawford Nos. 3-17-07, 3-17-08 and 3-17-09, 2018-Ohio-125, at ¶ 15. The best interest factors include: (a) the child's interaction and interrelationship with parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (b) the child's wishes, as expressed directly by the child or through the child's guardian ad litem; (c) the child's custodial history, including whether the child has been in the temporary custody of one or more public children services agencies for twelve or more months of a consecutive twenty-two-month period; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (e) whether any

of the factors in divisions (E)(7) to (11) of [R.C. 2151.414] apply in relation to the parents and child. R.C. 2151.414(D)(1)(a)-(e). When considering these best interest factors, no single factor is given greater weight than others by the statute. *In re N.R.S.* at ¶ 16, citing *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 56 (2006).

{¶23} Here, the trial court discussed each of the best interest factors in its August 2021 decisions and concluded that four of the factors weigh in favor of permanent custody to the Agency as in the children's best interest: R.C. 2151.414(D)(1)(a), (c) and (d) and also R.C. 2151.414(E)(10). On appeal, Mother argues the trial court's findings under several of the statutory best interest factors are against the manifest weight of the evidence.

{¶24} Regarding R.C. 2151.414(D)(1)(a), concerning the relationships with the children, the children's parents, siblings, relatives, and foster-care givers, Mother argues that this factor should weigh heavily in her favor because the evidence showed the bond between her and the children and further showed her appropriate interactions with the children during visitation. Here, the trial court noted, and the record reflects, that the children were removed from their home since July 25, 2019 when they were placed together in a foster care home, where they remained throughout the case, and are reportedly doing very well. Notably, Mother was still having supervised visitation with her children once every two weeks.

Accordingly, the trial court determined this factor weighed in favor of granting permanent custody as in the best interest of the children.

{¶25} Regarding factor (D)(1)(b), concerning the wishes of the children as expressed directly or through the recommendation of the guardian ad litem, both the guardian ad litem's testimony and report recommended that permanent custody be granted to the Agency. Nevertheless, Mother points out that, while the trial court acknowledged the children desired reunification with their father, it ignored evidence that the children also wanted to be reunited with her. Even if the trial court's acknowledgement was in error, the trial court found that this best interest factor weighed against granting permanent custody to the Agency, and for the reasons noted herein, the evidence on the other factors supports the trial court's best interest determination. *See In re D.K.*, 3d Dist. Allen No. 1-09-16, 2009-Ohio-5438, ¶ 34 (noting that "even if the trial court's finding * * * was in error, we believe that the other findings were certainly sufficient to support the trial court's permanent custody decision"). We note, too, that counsel had been appointed for the children to represent their wishes regarding custody.

{¶26} Under R.C. 2151.414(D)(1)(c), the trial court must consider the children's custodial history. Mother points to the children's custodial history, prior to the Agency's involvement, that B.P. lived with her from birth until she was almost two years old and that S.P. lived with her from birth until she was almost five years

old. Here, the trial court noted that the children had been in the temporary custody of the Agency for more than twelve months of a consecutive twenty-two-month period. Specifically, as discussed above, at the time of the filing of the motions for permanent custody, the children had been living in foster care for approximately twenty-two months. The trial court determined this factor weighed in favor of granting permanent custody.

{¶27} With respect to the factor in R.C. 2151.414(D)(1)(d), concerning the children's need for permanency, Mother asserts that she could provide the children with a legally secure permanent placement by recognizing the strides she made in completing the case plan objectives and accepting her solution for safe and stable housing at this time. This factor involves whether the child needs a legally secure permanent placement and whether this can be achieved without a grant of permanent custody to the agency. *See In re R.R.*, 3d Dist. Logan No. 8-20-26, 2021-Ohio-1620, ¶ 74.

{¶28} On this point, the trial court recognized that Mother had recently began working on the case plan, but reasoned that, despite Mother's strides, she has not progressed past supervised visits and only recently (June 2021) moved to a more appropriate home. At the permanent custody hearing, the Agency's ongoing caseworker testified that Mother had recently moved out of her mom's home in June 2021 and started living with two friends. The caseworker expressed concern that

Mother's current home would present space issues if the children were to move in with her.  The home is one which the Mother shares with two friends, has two bedrooms, and there would be six people in the home--three adults and three children, as her friends are also expecting a child of their own.  The caseworker indicated, additionally, that although Mother has made progress on her case plan services, she has not established stable housing for the children and that she would be able to consistently meet the children's basic needs.  The caseworker described a history of Mother leaving her mom's home and residing with friends, but then returning to her mom's home.

{¶29} The trial court noted that the caseworker testified the children were in need of a secure and permanent placement.  A legally secure permanent placement " ' "is more than a house with four walls.  Rather, it generally encompasses a stable environment where a child will live in safety with one or more dependable adults who will provide for the child's needs." ' " *In re B.F.*, 3d Dist. Paulding No. 11-21-04, 2021-Ohio-4251, ¶ 57, quoting *In re K.M.*, 3d Dist. Crawford Nos. 3-18-11 and 3-18-12, 2018-Ohio-3711, ¶ 29, quoting *In re M.B.*, 4th Dist. Highland No. 15CA19, 2016-Ohio-793, ¶ 56.  " '[A] child's best interests require permanency and a safe and secure environment.' " *In re A.R.*, 8th Dist. Cuyahoga No. 103450, 2016-Ohio-1229, ¶ 22, quoting *In re Holyak*, 8th Dist. Cuyahoga No. 78890 (July 12, 2001).  These young children need a stable and safe placement now.  Moreover, by

-15-

the time Mother had done those things to progress toward permanency, the children had a lengthy custodial history with the Agency and they were in need of legally secure placement. The trial court's finding regarding this factor was consistent with the evidence presented.

{¶30} Lastly, under the factor set forth in R.C. 2151.414(D)(1)(e), the trial court cited division (E)(10) of R.C. 2151.414 in making its determination regarding the children's best interest. *See* R.C. 2151.414(E)(10) ("The parent has abandoned the child."). Pursuant to R.C. 2151.011(C), a child is "presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." *Accord In re D.K.*, 3d Dist. Allen No. 1-09-16, 2009-Ohio-5438, at ¶ 25. This Court has held that R.C. 2151.011(C) creates a presumption of abandonment, which can then be rebutted by the parent. *In re D.K.* at ¶ 25, citing *In re Cravens,* 3d Dist. No. 4-03-48, 2004-Ohio-2356, ¶ 23.

{¶31} In its judgment entry, the trial court made the following finding of abandonment:

> **This factor applies to [Mother] as she abandoned the children by failing to visit with them from July 25, 2019 until the telephone calls during the shut-down from the pandemic (March 23, 2020-May 1, 2020) and then again failed to visit with the children thereafter until March 1, 2021.**

(Aug. 10, 2021 J.E. at p. 12).

{¶32} Mother challenges the factual sufficiency of the evidence presented to support the trial court's abandonment finding. The record showed that while the Agency made a referral for visitation through Harmony House, Mother cancelled the Harmony House intake for visitation, which was originally scheduled for August 2019, and Harmony House had no further contact with her until March 2020. Mother did not complete the required intake until March 4, 2020, nearly eight months after the children were placed in foster care. The shutdown from the pandemic occurred shortly thereafter, but only lasted until May 1, 2020. On May 7, 2020, the Agency conveyed a concern that lice was an issue and Harmony House policy required Mother to provide a letter from the health department clearing her of lice in order to have in-person visits.[3] However, Harmony House did not hear back from Mother until November, and a new intake was then required because more than six months had lapsed, which Mother completed on December 17, 2020. Since Harmony House still was not provided with the letter clearing Mother of lice until February 5, 2021, the first visitation occurred on March 1, 2021. The record of Mother's lack of contact with her children shows inaction on Mother's part, not the result of lack of reasonable opportunity. While there was testimony of some very sporadic video calls/phone calls with the children during March 2020 – March

---

[3] The record indicated both children had a lice infestation when they first entered foster care after removal from the maternal grandmother's home, which was roach and insect infested. The semi-annual review in May 2020 noted the children's current treatment for lice and at the time, Mother was living at maternal grandmother's home.

2021, it is clear to this Court there was a period of time in which Mother had failed to have contact with the children well beyond the statutorily required ninety days. Consequently, we do find that the trial court's finding of abandonment was supported by sufficient evidence.

*Conclusion*

{¶33} Based upon our review of the record and the trial court's analysis, we conclude that the trial court's best interest determinations are supported by clear and convincing evidence and are not against the manifest weight of the evidence. Therefore, we do not find that the trial court's decision to grant the Agency's motions for permanent custody of the children and to terminate Mother's parental rights is against the manifest weight of the evidence.

{¶34} Accordingly, Mother's first and third assignments of error are overruled.

*Second Assignment of Error*

{¶35} In this assignment of error, Mother alleges that because the Agency failed to use reasonable efforts to reunify her children with her, the trial court should not have granted permanent custody to the Agency. In support of this assertion, Mother points to the trial court's finding that the Agency "did not make diligent efforts regarding [Mother] once she re-engaged." (Aug. 10, 2021 J.E. at p. 10).

*Legal Authority*

{¶36} "[V]arious sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit," most notably R.C. 2151.419. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, at ¶ 29. R.C. 2151.419(A)(1) requires a trial court to determine whether a children services agency "made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home." However, this statute applies only at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children * * *." *In re C.F.* at ¶ 41; *accord In re R.R.*, 3d Dist. Logan No. 8-20-26, 2021-Ohio-1620, at ¶ 78. Notably, the Ohio Supreme Court concluded that " '[b]y its plain terms, the statute does not apply to motions for permanent custody brought pursuant to R.C. 2151.413, or to hearings held on such motions pursuant to R.C. 2151.414.' " *In re C.F.* at ¶ 41, quoting *In re A.C.*, 12th Dist. Clermont No. CA2004-05-041, 2004-Ohio-5531, ¶ 30. Nonetheless, "[t]his does not mean that the agency is relieved of the duty to make reasonable efforts" before seeking permanent custody. *Id.* at ¶ 42. Additionally, "[if] the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time." *Id.* at ¶ 43.

{¶37} In *In re R.R.*, 3d Dist. Logan No. 8-20-26, 2021-Ohio-1620, this Court applied the Ohio Supreme Court's holding in *In re C.F.* This Court held that because the trial court previously made reasonable-efforts findings, the Agency was not required to prove, nor was the trial court required to find, that the Agency used reasonable efforts to reunify Mother with her child before the trial court could grant permanent custody of the child to the Agency. *Id.* at ¶ 79.

{¶38} Here, the record reflects that the trial court made several reasonable-efforts findings prior to the permanent custody hearing. Thus, the trial court did not need to again find that the Agency used reasonable efforts before it could grant the Agency permanent custody of the children. For instance, the record reflects that the trial court made reasonable-efforts findings when the children were placed in the emergency temporary custody of the Agency and when they were placed in the temporary custody of the Agency following the adjudication of neglect and dependency. The trial court also made a reasonable-efforts finding when it granted the first six-month extension by finding that "the Agency has made reasonable efforts to finalize a permanency plan and avoid continued removal of the children in that they have provided counseling services, case management services, and visitation to the parents of the children." (June 16, 2020 J.E. at p. 2). The trial court again concluded the Agency made reasonable efforts at the second six-month extension hearing. (Dec. 17, 2020 J.E. at p. 2).

**{¶39}** This notwithstanding, we find no merit to Mother's contention. In the case relied upon by Mother, *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, the Ohio Supreme Court stated: "To the extent that the trial court relies on R.C. 2151.414(E)(1) at a permanency hearing, the court must examine the 'reasonable case planning and diligent efforts by the agency to assist the parents' when considering whether the child cannot or should not be placed with the parent within a reasonable time." *In re C.F.* at ¶ 42. However, as indicated by its finding pertaining to Mother, the trial court did not rely on R.C. 2151.414(E)(1) at the permanency hearing as a basis for finding that permanent custody be granted to the Agency.

**{¶40}** Further, the record demonstrates that there was evidence before the trial court that supported its conclusion that the Agency's case plan was reasonably calculated to correct the reasons the children were removed in this case. *See In re A.M.A.,* 3d Dist. Crawford No. 3–13-02, 2013–Ohio–3779, ¶ 29, quoting *In re Leveck,* 3d Dist. Hancock Nos. 5–02–52, 5–02–53, and 5–02–54, 2003–Ohio–1269, ¶ 10, (" 'the issue is not whether there was anything more that [the agency] could have done, but whether the [agency's] case planning and efforts were reasonable and diligent under the circumstances of [the] case' "). According to the Agency's ongoing supervisor, the Agency could not recommend unsupervised visitation due to the fact that Mother had just only recently engaged in visits at Harmony House

and the Agency's concerns relative to where Mother was living. As the Agency's supervisor testified, "[p]rior to last month, when [Mother] moved in with her new roommates, she was living with her mom. Her mother's home was already determined to be not a safe setting for the children to be in, so we could not move towards unsupervised time." (Tr. at 115). Mother's own inaction delayed her in-person visitation, not the Agency's lack of diligence. Accordingly, Mother's contention that the Agency failed to make reasonable efforts to reunify the family is without merit under the circumstances of this case.

{¶41} Mother's second assignment of error is overruled.

{¶42} Based on the foregoing, the assignments of error are overruled and the judgments of the Hancock County Common Pleas Court, Juvenile Division, are affirmed.

*Judgments Affirmed*

**ZIMMERMAN, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**