[Cite as *In re I.G.*, 2014-Ohio-1136.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

IN RE:

    I.G.

[CHEALSEY M. REYES - APPELLANT].

CASE NO. 9-13-43

O P I N I O N

---

IN RE:

    G.G.

[CHEALSEY M. REYES - APPELLANT].

CASE NO. 9-13-44

O P I N I O N

---

IN RE:

    C.S.

[CHEALSEY M. REYES - APPELLANT].

CASE NO. 9-13-45

O P I N I O N

---

**Appeals from Marion County Common Pleas Court
Juvenile Division
Trial Court Nos. 2011 AB 0048, 2011 AB 0049 and 2011 AB 0050**

**Judgments Affirmed**

**Date of Decision:   March 24, 2014**

---

**APPEARANCES:**

    *Robert C. Nemo* **for Appellant**

    *David Stamolis* **for Appellee**

**SHAW, J.**

{¶1} Mother-appellant Chealsey M. Reyes ("Reyes") appeals the August 6, 2013 judgment entries of the Marion County Common Pleas Court, Family Division, granting the Marion County Children Services' ("MCCS") motions for permanent custody of Reyes' three children, "G.G.," "I.G.," and "C.S."

{¶2} The facts relevant to this appeal are as follows. In March of 2010 MCCS became involved with Reyes and her first two children G.G., born in October of 2007, and I.G., born in January of 2009, when I.G. was hospitalized for ingesting marijuana. At the time, Reyes was pregnant and living with her boyfriend, Christopher Santiago. Santiago was not the father of G.G. or I.G. As a result of I.G. ingesting marijuana, Reyes was charged with child endangering and convicted of that offense. (State's Ex. C).

{¶3} In the months that followed, MCCS remained involved with Reyes and her children, periodically testing her and the children for drugs. The children, who were mainly tested by "palm swabs," tested positive for cocaine on multiple occasions.

{¶4} Reyes' third child, C.S., was born in September of 2010. Around that time, all three children were removed from Reyes' care after the children again tested positive for cocaine.

{¶5} The caseworker for MCCS, Matt Coldiron, believed that the positive cocaine tests might have been a result of the children's living environment rather than Reyes using drugs, so Reyes' house was professionally cleaned. When traces of cocaine were still found on the children after the residence was cleaned, Coldiron helped Reyes secure a new residence. The children were then returned to Reyes' care at the new residence. Over the following months, the children were repeatedly tested for drugs and the drug screens came back negative. MCCS then closed its original case.

{¶6} On April 5, 2011, MCCS filed motions for emergency ex parte orders to remove all three children from Reyes as I.G. and G.G. tested positive for ingesting cocaine. The ex parte motions were granted, and the children were placed into the temporary custody of MCCS. Subsequently, the children were placed into foster care with Joshua and Heather Tackett, where they remained during the pendency of this case.

{¶7} On April 8, 2011, MCCS filed complaints regarding all three children, alleging that the children were abused, neglected, and dependent. On May 6, 2011, Reyes and Christopher Santiago, the father of C.S., stipulated that C.S. was dependent. Reyes also stipulated that I.G. and G.G. were dependent.[1]

---

[1] The court set the matter for a further adjudication hearing as to the absent father of I.G. and G.G. The absent father was reportedly in Mexico, and had not been involved in the children's lives. He was served legally by publication, and did not appear at his adjudicatory hearing, thus the court ultimately found I.G. and G.G. dependent.

{¶8} As a result of I.G. and G.G. testing positive for cocaine, Reyes was again charged with Child Endangering, two counts, both felony offenses due to her having a prior Child Endangering conviction. She pled guilty to the offenses and was sentenced to two years of community control.

{¶9} MCCS developed a case plan for Reyes and conducted regular reviews of Reyes' progress. From October 2011, to February of 2012, Reyes' whereabouts were unknown. Throughout that time she made no progress on her case plan and made no visits with her children. Reyes would later admit that during this period of time she was regularly taking "pills" and heroin along with Santiago.

{¶10} In February of 2012 Reyes resurfaced and was arrested for a probation violation. She was then sent to the multi-county jail. Reyes remained in jail until April of 2012, at which time she was sent to "West Central," a community based correctional facility. While Reyes was at West Central, Coldiron took the children to visit Reyes once a month at the facility. In October of 2012, Reyes was released from West Central.

{¶11} On October 17, 2012, MCCS filed motions requesting that the agency be granted permanent custody of the three children. The motions alleged that MCCS had custody of the children for more than twelve out of the previous twenty-two months, that MCCS did not believe the parents would be able to

provide for the children within a reasonable period of time, and that it would be in the children's best interests if MCCS was granted permanent custody.

**{¶12}** On December 6, 2012, Reyes tested positive for opiates, violating her probation, and was taken back to jail.[2] On December 18, 2012, she was sent to prison at the Ohio Reformatory for Women. On March 1, 2013, Reyes was granted judicial release. Upon release Reyes went to live with a friend, Kelly Ring.

**{¶13}** On April 3, 2013, Reyes was jailed for another probation violation when she was charged with Possession of Heroin. Reyes was convicted of the charge on April 19, 2013. As a result of the "Possession" case, Reyes was ordered to complete a residential treatment program at "Foundations" in Marion. Reyes began the program, and while there, on May 20, 2013, filed motions for legal custody of her children.

**{¶14}** The final hearing on MCCS's motions for permanent custody and Reyes' motions for legal custody was scheduled to take place on May 28, 2013. The day before the final hearing began, Reyes left the treatment facility at Foundations, and was found in violation of her probation. She was then incarcerated from May 28, 2013, to June 5, 2013.

---

[2] It is also indicated that in the time Reyes was not incarcerated between October 2012 and December 2012, Reyes was charged with, and later convicted of, two Theft offenses, which apparently occurred in November of 2012.

{¶15} The final hearing in this case took place over four days: May 28, 2013, June 21, 2013, July 2, 2013, and July 19, 2013. The GAL filed his report in this case on July 12, 2013, recommending that the agency be granted permanent custody of the three children. In support, the GAL cited Reyes' drug problem and the children's need for permanency. Throughout the final hearings, Reyes remained on house arrest at the Ring's residence.

{¶16} On August 6, 2013, the trial court filed its judgment entries granting permanent custody of G.G., I.G., and C.S. to MCCS. The trial court found that the children had been in the custody of the agency for more than twelve of the prior twenty-two months and that it would be in the children's best interests if the agency was awarded permanent custody. It is from this judgment that Reyes appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**THE TRIAL COURT LACKED JURISDICTION TO GRANT PERMANENT CUSTODY TO APPELLEE BECAUSE APPELLANT WAS NEVER SERVED WITH NOTICE OF APPELLEE'S MOTION FOR PERMANENT CUSTODY.**

**ASSIGNMENT OF ERROR 2**
**ASSUMING, ARGUENDO, THAT APPELLANT WAIVED ANY JURISDICTIONAL ARGUMENTS DUE TO HER FAILURE TO RAISE SAID ISSUES AT TRIAL, THE FAILURE OF APPELLANT'S TRIAL COUNSEL TO RAISE SUCH ERRORS CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.**

**ASSIGNMENT OF ERROR 3**
**THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY GRANTING APPELLEE'S MOTION FOR PERMANENT CUSTODY WHEN THERE WAS NOT CLEAR AND CONVINCING EVIDENCE THE CHILDREN BE PLACED IN THE PERMANENT CUSTODY OF APPELLEE.**

*First Assignment of Error*

{¶17} In Reyes' first assignment of error, Reyes argues that she was never served with notice of MCCS's motions for permanent custody. Specifically, Reyes argues that as a result of the lack of proper service, the judgments of the trial court are void.

{¶18} Complete participation in a permanent custody hearing waives any possible inadequacy of the notice. *In re Thompson*, 10th Dist. Franklin No. 02AP-557, 2003-Ohio-580, ¶ 32, citing *In re Shaeffer Children*, 85 Ohio App.3d 683, 688 (3d. Dist.1993). Similarly, "[t]he issue of notice is waived on appeal when the parent's attorney is present for various permanent custody hearings and never argues improper notice." *In re Keith Lee P.*, 6th Dist. Lucas No. L-03-1266, 2004-Ohio-1976, ¶ 9 citing *In re Billingsley,* 3d Dist. Putnam Nos. 12–02–07, and 12–02–08, 2003–Ohio–344, at ¶ 10; *In re Jennifer L.* (May 1, 1998), Lucas App. No. L–97–1295.

{¶19} Even assuming that service was not perfected in this case, Reyes waived any claim of defect when she fully participated in the final hearing, represented by counsel, over multiple final hearing dates and never raised any

claim of defect. In addition, Reyes testified at the final hearing on June 21, 2013, that she knew MCCS had filed the "Motion for Permanent Placement" in October of 2012. (Tr. at 260-61). Furthermore, Reyes also testified at the final hearing that she knew what the hearing was for. (Tr. at 262-63).

**{¶20}** Thus Reyes completely participated in the permanent custody hearing, was aware of what the hearing was for, and admitted to knowing about it ahead of time. Even assuming a defect in service was present, Reyes' argument is waived. Accordingly, Reyes' first assignment of error is overruled.

*Second Assignment of Error*

**{¶21}** In Reyes' second assignment of error, she contends her trial counsel was ineffective for failing to bring the alleged "defect" in service of the permanent custody motions to the trial court's attention.

**{¶22}** In order to succeed on a claim of ineffective assistance of counsel, an appellant must "show that his trial counsel was deficient and that such deficiency prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052 (1984). Specifically, an appellant must establish 1) that the trial counsel's representation fell below an objective standard of reasonableness, and 2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.; State v. Bradley,* 42 Ohio St.3d 136 (1989).

**{¶23}** As stated previously, Reyes completely participated in the final hearing and stated that she was aware of it ahead of time. Moreover, there is absolutely no indication in the record that Reyes would have called any witnesses other than those she did call at the final hearing, or would have had her counsel prepare differently for the final hearing even assuming she was not properly served. In fact, at that final hearing she was also arguing for her motion for legal custody of the children. As there is no indication that pointing out any purported defect in service would have altered the proceedings, we cannot find Reyes was denied effective assistance of counsel. Accordingly, Reyes' second assignment of error is overruled.

*Third Assignment of Error*

**{¶24}** In Reyes' third assignment of error, she argues that the trial court erred in granting MCCS's permanent custody motions. Specifically, Reyes contends that clear and convincing evidence was not present because the main issue in this case was Reyes' drug use, and at the time of the final hearing Reyes had been maintaining her sobriety.

**{¶25}** "The standard for appellate review in a permanent-custody case is whether the trial court had clear and convincing evidence to make an award of permanent custody." *In re Terrence,* 6th Dist. Lucas No. L–05–1018, 2005–Ohio–3600, ¶ 86, citing *In re Hiatt,* 86 Ohio App.3d 716, 725 (4th Dist.1993). The

"clear and convincing evidence" standard is a higher degree of proof than the "preponderance of the evidence" standard generally used in civil cases, but is less stringent than the "beyond a reasonable doubt" standard used in criminal cases. *State v. Schiebel,* 55 Ohio St.3d 71, 74, (1990). On appeal from an order terminating parental rights, an appellate court will not reverse the trial court's judgment if, upon a review of the record, it determines that the trial court had sufficient evidence to satisfy the clear and convincing evidence standard. *In re Wise,* 96 Ohio App.3d 619, 626, (9th Dist.1994).

{¶26} As an initial matter, we note that "[i]t is well recognized that the right to raise a child is an 'essential' and 'basic' civil right." *In re Franklin*, 3d Dist. Marion Nos. 9-06-12, 9-06-13, 2006-Ohio-4841, ¶ 9, citing *In re Hayes*, 79 Ohio St.3d 46, 48 (1997). The Supreme Court of Ohio has held that a parent "must be afforded every procedural and substantive protection the law allows." *In re Hayes, supra*, quoting *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist.1991). It is with these constructs in mind that we proceed to determine whether the trial court erred in granting permanent custody of the children to MCCS.

{¶27} Section 2151.414(B)(1) of the Revised Code provides that a trial court

> **may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to**

**the agency that filed the motion for permanent custody and that any of the following apply:**

**(a)   The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, \* \* \* and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.**

**(b)   The child is abandoned.**

**(c)   The child is orphaned, and there are no relatives of the child who are able to take permanent custody.**

**(d)   The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and \* \* \* the child was previously in the temporary custody of an equivalent agency in another state.**

R.C. 2151.414(B)(1)(a-d).

**{¶28}** Based on the statute, there are two steps to the analysis in determining a permanent custody motion.  First a court must determine which, if any, of the factors in R.C. 2151.414(B)(1) are present.  Second, if one of the factors in R.C. 2151.414(B)(1) is present, the court must determine if granting permanent custody to the agency is in the children's best interests.

**{¶29}** Turning first to the factors of R.C. 2151.414(B)(1), in this case, the court specifically found in its judgment entries that the children had been in "the

-11-

temporary custody of MCCS since April 5, 2011, or over twenty-seven (27) months from their removal from [Reyes]." The record supports the trial court's finding in that the children were placed into the temporary custody of MCCS on April 5, 2011, were in the agency's custody when MCCS filed its motion on October 17, 2012, and the children were still in MCCS's temporary custody throughout the final hearing, which took place on four separate dates ranging from May 28, 2013, to July 19, 2013.

{¶30} Pursuant to the plain language of R.C. 2151.414(B)(1)(d), when a child has been in an agency's temporary custody for twelve or more months of a consecutive twenty-two month period, a trial court need not find that the child cannot or should not be placed with either parent within a reasonable time. *Compare* R.C. 2151.414(B)(1)(d) *with* R.C. 2151.414(B)(1)(a). Thus, the court was not required to go into a separate "reasonable time" analysis under R.C. 2151.414(B)(1)(a).

{¶31} Nevertheless, Reyes appears to contend that the children could be placed with her within a reasonable time. She contends that she had been able to maintain her sobriety since being on house arrest and that she would be looking into drug treatment and securing a job.

{¶32} However, as the trial court's finding regarding how long the children had been in MCCS's custody was clearly supported by the record, we cannot find

-12-

that the trial court erred on this issue because the trial court was not required to engage in the "reasonable time" analysis under R.C. 2151.414(B)(1)(a) when it had made a finding under R.C. 2151.414(B)(1)(d).[3] Accordingly, we cannot find Reyes' argument on this issue well-taken.

{¶33} Once one of the factors of R.C. 2151.414(B)(1) was determined to be present in this case, the trial court was required to determine whether it was in the children's best interests for the agency to be granted permanent custody. In determining the best interests of the children under this statute, R.C. 2151.414(D)(1), directs a court to consider all relevant factors, including, but not limited to, the following:

> **(a)  The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;**
>
> **(b)  The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;**
>
> **(c)  The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month**

---

[3] Perhaps the confusion for Reyes is that the trial court made the additional, albeit unnecessary, finding that the children "cannot be placed with any parent within a reasonable period of time, and further, should not be placed with any parent due to the current circumstances of each parent with no expectation for improvement within a reasonable period of time." Thus the trial court seemed to find both R.C. 2151.414(B)(1)(d) and (B)(1)(a) applicable to the case before us. As (B)(1)(d) was clearly established in the record, we need not further analyze the trial court's additional unnecessary finding under (B)(1)(a). Nevertheless, after reviewing the record, we find that the trial court's decision on that issue was supported by clear and convincing evidence as well.

**period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;**

**(d)   The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;**

**(e)   Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child**.

R.C. 2151.414.

{¶34} On the issue of the children's best interests, the trial court stated the following in its judgment entries.

**In examining the factors contained in \* \* \* 2141.414(D), including all other relevant factors presented with regard to all three (3) minor children, continuing their current placement together with their foster family is in their best interests.  This is evidenced by their bonding and integration with the foster family over the past twenty-seven (27) months.  All three (3) children have resided together in foster care since April 5, 2011, in excess of the required twelve (12) or more months in a consecutive twenty-two (22) month period, and the children are in need and deserving of a legally secure permanent placement. The current and continuing circumstances of Mother and both Fathers prevent this from occurring with any of them in the foreseeable future, and permanency and stability can only be accomplished through a grant of permanent custody to MCCS.**

**\* \* \***

**[A]ll three (3) parents have demonstrated a lack of commitment toward their children by their absence, failure to regularly support or visit with them and their inability to provide an**

> **adequate permanent home * * *[.] Failure to comply with the Case Plan, continued incarceration, drug addiction, lack of employment to provide financial support, suitable stable housing, and lack of commitment to the basic needs of the children have demonstrated parental unwillingness to provide food, clothing, shelter, and other basic needs of the children[.]**

{¶35} On appeal, Reyes contends that this case "always involved the issue of drugs only" and that since Reyes maintained her sobriety, the children should have been returned to her care. (Appt.'s Br. at 18). In addition, Reyes argued that she had a better support system for maintaining her sobriety, that she was optimistic she would get a job and receive Social Security benefits, and that she had a strong bond with her children.

{¶36} Our review of the record shows that with regard to factor (a) of R.C. 2151.414(D)(1) all three children had been in the same foster home for over two years. The children's foster mother, Heather Tackett, testified that the children had bonded with her, her husband, and their other children. Tackett testified that she would consider adopting the children should the agency be granted permanent custody.

{¶37} Reyes, however, had been incarcerated for the majority of the children's lives. In fact, she was still on house arrest during the multiple final hearing dates. While there was testimony that Reyes had a bond with her children, at one point during this case Reyes was completely out of contact with her

children and her probation officer, while she was, admittedly, doing heroin. Reyes also missed several visits and failed to complete her case plan.

{¶38} With regard to factor (b), GAL Todd Workman filed a report wherein he recommended that MCCS's permanent custody motions be granted. Workman testified at the final hearing that although Reyes' progress in staying clean carried weight with him, Reyes had consistently failed to recognize her own problems. (Tr. at 408). His recommendation was ultimately based upon Reyes' addiction, her "numerous relapses," and her continued involvement with the legal system. (Doc. 96).

{¶39} With regard to factor (c), as previously stated, the children had been in the temporary custody of the agency for well over twelve months.

{¶40} With regard to factor (d), the children had been in the custody of the agency for over two years by the time the final hearing was completed. Reyes had not fulfilled all of the requirements of her case plan, failing to complete drug treatments. She had been incarcerated multiple times for a variety of offenses and probation violations. Although Reyes claimed at the final hearing that she had been sober for 100 days, she had been in trouble for drugs after MCCS filed its permanent custody motions. She was charged with, and convicted of, Possession of Heroin nearly six months after MCCS filed its motions. In addition, she was charged with, and convicted of, two counts of Theft after MCCS filed its motions.

{¶41} Moreover, while Reyes' sobriety is to be commended, she had obtained sobriety while on house arrest. Presumably she had similar sobriety while incarcerated previously, and broke that sobriety upon release. Reyes had over two years to make progress on the case plan, and failed to complete it. There is no indication that Reyes will follow-through with her assertions that she will finish her next drug treatment, and in fact she left Foundations on the night before the final hearing, knowing that it placed her in violation of court orders.

{¶42} Factor (e) is inapplicable to the case before us.

{¶43} Based on the record and the evidence presented, we cannot find that the trial court erred in finding that it was in the children's' best interests that the agency be granted permanent custody. Accordingly, Reyes' third assignment of error is overruled.

{¶44} For the foregoing reasons Reyes' assignments of error are overruled and the judgments of the Marion County Common Pleas Court, Family Division, are affirmed.

***Judgments Affirmed***

**ROGERS and PRESTON, J.J., concur.**

**/jlr**