[Cite as *In re L.F.*, 2025-Ohio-3026.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

IN RE:

    L.F.,

**ADJUDICATED DEPENDENT CHILD.**

**[CHARLIE F. - APPELLANT]**

CASE NO. 6-25-02

**OPINION AND
JUDGMENT ENTRY**

Appeal from Hardin County Common Pleas Court
Juvenile Division
Trial Court No. 20223010

**Judgment Affirmed**

**Date of Decision: August 25, 2025**

APPEARANCES:

    *Andrea M. Bayer* **for Appellant**

    *Morgan S. Fish* **for Appellee**

**WALDICK, P.J.**

{¶1} Father-appellant, Charles F. ("Father"), brings this appeal from the January 27, 2025 judgment of the Hardin County Common Pleas Court, Juvenile Division, granting permanent custody of his daughter, L.F., to the Hardin County Department of Job and Family Services ("JFS"). On appeal, Father argues that he did not receive proper notice of the permanent custody hearing, that his counsel's failure to object to the lack of proper notice constituted ineffective assistance of counsel, that the trial court's decision was against the manifest weight of the evidence, and that the trial court erred by determining that JFS engaged in reasonable efforts to support reunification. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} L.F. was born in November of 2013. Her parents are Father and Sadi F. ("Mother"). By the time L.F. was approximately 2 years old, Father was not involved in L.F.'s life. At the inception of this case, Father was living in Texas.

{¶3} Prior to the instant case, L.F. was removed from Mother's care by JFS due to drug issues in the home. However, L.F. was ultimately returned to Mother's custody.

{¶4} Early in L.F.'s life, Mother became involved in a romantic relationship with Garrett B. ("Garrett"). Mother and Garrett had two children together: P.B. born

in May of 2019, and C.B. born in November of 2020. According to Mother, Garrett also acted as a "step-father" to L.F.

{¶5} On or about April 5, 2022, Mother was involved in a "domestic relations dispute" and she "fell while holding [C.B.]," breaking her collarbone. The next day, April 6, 2022, JFS responded to Mother's residence due to a reported overdose. Mother was allegedly rolling around on the floor with her tongue out of her mouth. Mother was not cooperative with the EMTs that responded and she was acting erratically. The EMTs stated that Mother appeared to be under the influence of methamphetamine.

> In addition, at the time,
>
> [t]he children appeared neglected, and cat food was found in their diapers, and [Mother] asserted that cat food was better than no food. Further, [C.B.] was so dehydrated that he required medical attention at Hardin Memorial Hospital, and required two bags of IV fluid. [Mother] was taken to Hardin Memorial Hospital and tested positive for amphetamines, cocaine, buprenorphine, and fentanyl.

(Doc. No. 176).

{¶6} P.B. and C.B. were described as "urine soaked" and matted with dirt or a mud-looking substance. One of the boys also had a bad diaper rash. L.F. was not at home at the time of the "overdose" incident. In fact, Mother did not know the location of L.F. It was later learned that L.F. had been taken to school.

{¶7} On April 7, 2022, a complaint was filed alleging that L.F. was a neglected child and that she was a dependent child. Similar allegations were made

regarding the other two children, but as they are not the subjects of this appeal, we will not further address them.

**{¶8}** On May 27, 2022, an adjudication hearing was held. Father appeared by telephone from Texas. An agreement was reached wherein the parents ultimately admitted that L.F. was a dependent child and JFS dismissed the remaining allegations. Disposition was set for a later date. Father waived his appearance at the dispositional hearing.

**{¶9}** On June 16, 2022, the case proceeded to a dispositional hearing. The parties agreed that the children would be returned to Mother with daily oversight from JFS and daily drug screens for Mother. However, this disposition lasted less than two weeks before Mother tested positive for, *inter alia*, cocaine, and the children were again removed from her care and placed in the temporary custody of JFS.

**{¶10}** Mother initially engaged in services to address her substance abuse, but she was removed from sober-living for having someone else's prescription. Mother was incarcerated from May 2023 through July of 2023. Then, after her release, Mother had no contact with the children from July of 2023 through December of 2023.[1] Mother was held in contempt multiple times during this case for her failure to comply with court orders.

---

[1] Garrett, the father of Mother's other two children, was incarcerated during the majority of this case.

{¶11} Father was initially not part of the case plan and had little involvement; however, he was added to the case plan in August of 2022. Father exercised some virtual visits with L.F. but he made little effort to obtain custody. Father indicated he would like to have custody of L.F., but he repeatedly failed to assist in no less than three attempts by JFS to complete the Interstate Compact forms to have a home study in Texas. He claimed that he had no transportation to get to the post office to pick up the materials and that the Texas version of the JFS was 30-60 minutes away.

{¶12} On October 3, 2023, JFS filed for permanent custody of L.F. A hearing was held on the motion on December 8, 2023. Father was not present at the hearing despite accommodations being made for him to appear remotely. Father's attorney was present at the hearing and he indicated that he did not know why Father was not present. Father's attorney stated that he had sent Father two emails that week and he had tried four different phone numbers for Father that morning.

{¶13} Mother, who had not requested accommodations to appear remotely, was not in the courtroom but appeared via "Zoom."[2] All parties that were present agreed to proceed with the hearing. However, during the hearing the connection with Mother was lost. Subsequently, Father's counsel indicated he had been contacted by Father and Father was attempting to connect via Zoom but was unable. The trial court then continued the hearing, stating:

---

[2] Garrett was incarcerated during the hearing and was represented by counsel but otherwise not present.

Because of the unexplained technical difficulties for Mother and Father . . . the Court continued the hearing . . . and encouraged all parties to appear in person. The Court admonished all parties, counsel, and the GAL that if they chose to appear virtually [] the hearing would proceed even if technological difficulties arose.

(Doc. No. 212).

{¶14} The hearing continued on January 8, 2024. Mother was present through video and phone. Father failed to appear and did not contact the court or his attorney to explain his absence. Father's counsel was present for the hearing and participated fully.

{¶15} On January 27, 2025, the trial court filed a judgment entry granting permanent custody of L.F. to JFS. It is from this judgment that Father now appeals, asserting the following assignments of error for our review.

**First Assignment of Error**

**The trial court committed reversible and plain error in granting permanent custody when Appellant-Father was not properly served with notice of the filing of the permanent custody motion and hearing in accordance with R.C. § 2151.29 and Appellant-Father was therefore deprived of due process of law.**

**Second Assignment of Error**

**Trial counsel's failure to object to lack of proper service pursuant to R.C. § 2151.29 constituted ineffective assistance of counsel.**

**Third Assignment of Error**

**The trial court's decision to grant the motion for permanent custody was not supported by clear and convincing evidence and the decision was against the manifest weight of the evidence.**

**Fourth Assignment of Error**

**The trial court erred by determining that the Hardin County Department of Job and Family Services made reasonable efforts to support reunification of L.F. with Appellant-Father.**

*First Assignment of Error*

{¶16} In his first assignment of error, Father argues that he was not properly served with notice of the permanent custody hearing in accordance with R.C. 2151.29. Father acknowledges that neither he nor his attorney made any objection to any lack of proper notice in this case, so we review the matter under a plain error standard.

Standard of Review

{¶17} A finding of plain error is "strictly limited," "extremely rare" and occurs only in "exceptional circumstances." *In re A.D.*, 2022-Ohio-736, ¶ 17 (12th Dist.). This is because the plain error doctrine implicates only those errors that are obvious and prejudicial and would have a material adverse impact on the proceedings. *In re M.G.*, 2023-Ohio-1316, ¶ 34 (12th Dist.); *In re B.R.*, 2025-Ohio-599, ¶ 13 (3d Dist.)

Analysis

**{¶18}** Father argues that he did not receive proper notice of the permanent custody hearing in this case. Specifically, he contends that the assignment notice indicates only that it was served upon his attorney via U.S. mail.

**{¶19}** At the outset, we note that generally "[t]he issue of notice is waived on appeal when the parent's attorney is present for various permanent custody hearings and never argues improper notice." *In re Keith Lee P.*, 2004-Ohio-1976, ¶ 9 (6th Dist.); *In re I.G.*, 2014-Ohio-1136, ¶ 18 (3d Dist.). As Father's attorney was present for the permanent custody hearings and specifically did not argue any lack of notice, this issue is waived on appeal. *Id.*

**{¶20}** Notwithstanding the waiver issue, even if we assumed, without finding, that there was some defect in notice in this case, the record reflects that Father had at *least* constructive notice of the permanent custody hearing, if not also *actual* notice, which defeats his argument. *See In re C.B.*, 2020-Ohio-5151, ¶ 13 (4th Dist.). Father's attorney made accommodations so that Father could appear via Zoom from Texas prior to the final hearing, emailing Father the link. "A parent's attorney's statement to the court that he or she communicated with the parent, who failed to appear, proves that the parent had constructive notice of the permanent custody hearing." *Id.*

**{¶21}** In addition, Father's attorney repeatedly attempted to contact Father during the week before the hearing and on the day of the hearing, but Father did not

-8-

respond. Then, during the first day of the hearing itself, Father did eventually contact his attorney and "try" to sign into Zoom but was purportedly unsuccessful. Father made no attempts to attend the second day of the hearing.

{¶22} There is simply no indication in the record that Father was unaware of the hearing such that we could find plain error or a due process violation based on lack of notice. We find no plain error here, or any demonstrable prejudice. Therefore, Father's first assignment of error is overruled.

*Second Assignment of Error*

{¶23} In his second assignment of error, Father argues that he received ineffective assistance of counsel because his attorney did not object to the lack of proper notice.

Standard of Review

{¶24} In permanent custody matters, we apply the same test for ineffective assistance of counsel as in criminal cases. *In re C.W.*, 2024-Ohio-3366, ¶ 24 (3d Dist.). In order to succeed on a claim of ineffective assistance of counsel, an appellant must "show that his trial counsel was deficient and that such deficiency prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 674 (1984). Specifically, an appellant must establish: 1) that the trial counsel's representation fell below an objective standard of reasonableness, and 2) that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.; State v. Bradley,* 42 Ohio St.3d 136 (1989).

Analysis

{¶25} Father contends that if we were to determine he waived his argument regarding lack of proper notice, his counsel was ineffective for failing to object to the lack of proper notice. However, "waiver" was only one of the reasons that we determined Father did not establish a due process issue.

{¶26} The record reflects that Father had constructive notice of the final hearing. Further, it was clear from the statements made by trial counsel that trial counsel believed Father was aware of the final hearing. Moreover, there is no indication beyond bald speculation as to how Father's (virtual) presence would have altered the outcome of this case.

{¶27} Father had little involvement in L.F.'s life and had only been visiting with her through Zoom calls once per week. Father never established that he had proper housing or an income to support L.F. Father never followed-through with the local Texas children's services agency to take the *beginning* steps to receive custody of L.F.

{¶28} Based on the record before us, we find no ineffective counsel and no demonstrable prejudice. Thus Father does not establish either prong of ineffective counsel, and his second assignment of error is overruled.

*Third Assignment of Error*

**{¶29}** In his third assignment of error, Father argues that the trial court's decision to grant permanent custody of L.F. to JFS was against the manifest weight of the evidence.

Standard of Review

**{¶30}** "An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence." *In re M.J.*, 2013-Ohio-5440, ¶ 24 (8th Dist.). The Supreme Court of Ohio clarified the manifest-review standard in parental rights cases in *In re Z.C.*, 2023-Ohio-4703, holding that when reviewing a court's award of permanent custody and termination of parental rights, "the proper appellate standards of review to apply . . . are the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards, as appropriate depending on the nature of the arguments that are presented by the parties." *Id.* at ¶ 18. Father's third assignment of error challenges the termination of his parental rights under a manifest-weight standard.

> When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.

*In re Z.C.* at ¶ 14, citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20.

Analysis

**{¶31}** Revised Code 2151.414 sets forth specific findings a juvenile court must make before granting an agency's motion for permanent custody of a child. *In re C.F.*, 2007-Ohio-1104, ¶ 22. Specifically, there are two separate elements that must be established by clear and convincing evidence: (1) one or more of the conditions in R.C. 2151.414(B)(1)(a) through (e) must apply; and (2) granting permanent custody to an agency must be in the child's best interest. R.C. 2151.414(B)(1). Father argues that the trial court's determinations regarding both permanent custody elements were against the weight of the evidence. We will review each issue in turn.

**{¶32}** First, Father argues that the trial court erred by determining that R.C. 2151.414(B)(1)(a) applied to this case.[3] This statutory provision reads as follows:

> (B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the

---

[3] JFS argues in its brief that the "12 of 22" standard in R.C. 2151.414(B)(1)(d) should have applied in this case. Father argues in his reply brief that JFS uses the wrong calculation of time to reach the conclusion that "12 of 22" was met here. Regardless, the trial court did not make a finding under the "12 of 22" standard, and we will not further address that issue for the first time on appeal because it is not necessary and would be superfluous to the finding that the trial court made under R.C. 2151.414(B)(1)(a).

temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶33} In determining whether a child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents pursuant to R.C. 2151.414(B)(1)(a), the trial court is directed to consider the factors contained in R.C. 2151.414(E) alongside "all relevant evidence." These factors read as follows:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the

purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

(3) The parent committed any abuse . . . against the child, caused the child to suffer any neglect . . . or allowed the child to suffer any neglect . . . between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;

(6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 or [other stated sections] . . . [.]

(7) The parent has been convicted of or pleaded guilty to [various listed offenses].

. . .

(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food[.] . . .

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times . . . [.]

(10) The parent has abandoned the child.

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child[.]

(12) The parent is incarcerated at the time of the filing of the motion for permanent custody[.] . . .

(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

(15) The parent has committed abuse . . . against the child or caused or allowed the child to suffer neglect . . . and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.

(16) Any other factor the court considers relevant.

{¶34} In the trial court's entry, the trial court specifically listed each factor and addressed those that it determined were relevant to this case. The trial court's analysis covered Father, Mother, and Garrett as there were multiple parents and multiple other children involved in the permanent custody proceedings. However, as this is Father's appeal related to L.F., we will confine our review of the trial court's entry and the evidence presented related to Father.

{¶35} The trial court made the following findings related to Father under its analysis of R.C. 2151.414(E)(1):

> Father . . . has had little involvement with this case and with his child during this case. He's exercised virtual visits with his child . . . during this case but made little effort to obtain custody.
>
> In January, 2023 Father . . . relocated to Texas with his parents to care for his ill mother and the children residing in his parents' home. He reported to JFS that he receives disability but no evidence was presented concerning what was the disability.
>
> Although Father . . . had expressed an interest in having his child reside with him in Texas, he failed to take the necessary steps to accomplish it. He failed to assist in three attempts by JFS to complete the Interstate Compact forms and a home study in Texas. He offered lame excuses as to why he did not complete these matters, such as no transportation and failing to go to the post office to pick up the letter. Father['s] . . . contact with both the GAL and the Caseworkers has been sporadic at best throughout this case.

(Doc. No. 212).

{¶36} A review of the record establishes that the testimony clearly and convincingly supports the trial court's findings in its entry. Father was inconsistent in maintaining contact with the relevant parties in this case. At the case's inception, he lived in Texas. At one point he moved back to Kenton, Ohio, and changed his address three times in a short span of time. Shortly thereafter, he returned to Texas. At best the record reflects that Father had a substance abuse evaluation done under the case plan, but there is no evidence presented that during the time Father was in Ohio he did anything else of substance to advance his parental relationship with L.F. Thus we agree with the trial court that R.C. 2151.414(E)(1) weighs against Father.

{¶37} The next factor the trial court found relevant to Father was (E)(4), wherein the trial court stated that there was no evidence presented that Father

"provided any financial support" for L.F. (*Id*.). The record does not indicate Father ever provided anything for L.F.

{¶38} The trial court also found that Father "clearly demonstrated a lack of commitment by his unwillingness to provide adequate permanent housing by doing absolutely nothing to comply with three (3) attempts by JFS and the State of Texas to approve his child being placed in his care and custody." (*Id*.) Again, this finding is also supported by the evidence. Moreover, we note that Father's abysmal lack of effort to make it to the nearest post office is indicative of his lackadaisical attitude throughout this case.

{¶39} Based on the evidence presented, the trial court determined that one or more of the statutory factors in R.C. 2151.414(E) applied in this case, satisfying R.C. 2151.414(B)(1)(a), and the trial court's findings are supported by the evidence presented at the final hearing.[4] Therefore we find no error with regard to the trial court's analysis of the first element of the permanent custody determination, and we will proceed to review the trial court's "best interests" analysis under R.C. 2151.414(D).

{¶40} After determining that one of the factors in R.C. 2151.414(B) applied in the case *sub judice*, the trial court was required to proceed to determine the child's best interests under R.C. 2151.414(D)(1). This statutory subsection reads as follows:

---

[4] The trial court determined that the "abandonment" factor, (E)(10), could be relevant to each parent, but the trial court indicated it would not apply that section.

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶41} In its entry, the trial court again individually addressed each of the statutory factors. With regard to factor (a), the trial court determined that Father had only visited L.F. virtually and had never progressed beyond that point. Mother's

-18-

testimony indicated Father had not been involved in L.F.'s life since she was 2 years old.

**{¶42}** With regard to factor (b), the trial court determined that the children were too young to express their wishes; however, the GAL recommended that the trial court grant the permanent custody motion, supporting the trial court's decision.

**{¶43}** With regard to factors (c) and (d), the children had been in the temporary custody of JFS since June 29, 2022. L.F. was in desperate need of permanent placement, and Father had failed to do anything to secure L.F.'s placement in Texas. Thus the only option to achieve permanency was by granting JFS's motion.

**{¶44}** Finally, the trial court determined that factor (e) was not applicable.

**{¶45}** After reviewing all the evidence, the trial court determined by clear and convincing evidence that it was in L.F.'s best interests to grant JFS's permanent custody motion. Following a review of the evidence presented, we do not find that this is one of the exceptional cases where the evidence weighs heavily against the result. Therefore, Father's third assignment of error is overruled.

*Fourth Assignment of Error*

**{¶46}** In his Fourth assignment of error, Father argues that the trial court erred by determining that JFS made reasonable efforts to support reunification with Father.

Relevant Authority

**{¶47}** "[V]arious sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit," most notably R.C. 2151.419. *In re C.F.*, 2007-Ohio-1104, ¶ 29. Revised Code 2151.419(A)(1) requires a trial a trial court to determine whether a children's services agency "made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home." However, this statute applies only at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children[.]" *In re C.F.* at ¶ 41; *accord In re R.R.*, 2021-Ohio-1620, ¶ 78 (3d Dist.).

**{¶48}** Notably, the Supreme Court of Ohio concluded that "'[b]y its plain terms, the statute does not apply to motions for permanent custody brought pursuant to R.C. 2151.413, or to hearings held on such motions pursuant to R.C. 2151.414.'" *In re C.F.* at ¶ 41, quoting *In re A.C.*, 2004-Ohio-5531, ¶ 30 (12th Dist.). Nonetheless, "[t]his does not mean that the agency is relieved of the duty to make reasonable efforts" before seeking permanent custody." *Id.* at ¶ 42. "[If] the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time." *Id.* at ¶ 43.

{¶49} In *In re R.R.*, 2021-Ohio-1620, ¶ 79 (3d Dist.), this Court applied the Supreme Court of Ohio's holding in *In re C.F.* and determined that because the trial court previously made reasonable-efforts findings, an agency was not required to prove, nor was the trial court required to find, that the agency used reasonable efforts to reunify parents with their children before the trial court could grant permanent custody to the agency.

Analysis

{¶50} Although Father argues that the trial court erred by determining in its final judgment entry that JFS engaged in reasonable efforts to support reunification, the trial court had previously determined that JFS engaged in reasonable efforts to reunify the family at multiple earlier points in this case. Generally, a children's services agency is required to demonstrate reasonable efforts prior to filing a permanent custody motion, not at the permanent custody hearing, *unless it has failed to do so previously. In re I.C.*, 2023-Ohio-4707, ¶ 58 (3d Dist.), citing *In re S.S.*, 2017-Ohio-2938, ¶ 166-169 (4th Dist.). "Because the trial court entered a reasonable efforts finding before placing the children in the agency's permanent custody," it was not required to do so again. *See id.*

{¶51} Nevertheless, in the interest of justice we will review Father's argument. Throughout this case the trial court made "reasonable efforts" findings. The findings were made at multiple prior hearings and in multiple prior entries. In fact, the issue of reasonable efforts was challenged during the pendency of this case

-21-

and the trial court held hearings on the issue on several occasions. Testimony was presented regarding the services offered and Father's failure to engage with the services.

{¶52} For example, at an annual review hearing on October 2, 2023, Mother challenged the "reasonable efforts" issue. Father was not present for the hearing, either in person or virtually. His attorney indicated that he had been unable to contact Father for "quite some time." (Tr. at 6). Testimony was presented at the hearing related to Father in the following segment:

> Q. And as for [Father], what services has the Agency offered during this review period?
>
> A. [Father] has resided in Texas during the entire review period. It's been very difficult to make contact with him via phone or virtually. Some of the contacts has [sic] been via email only. We have done one to two Interstate Compact requests to Texas for potential placement of all three of the children. However, he has failed on those two attempts, as well as the very first attempt that was sent.
>
> Q. Is he still engaging in any case plan services to your knowledge?
>
> A. Not to my knowledge.
>
> Q. But have those been offered?
>
> A. Yes.

(Tr. at 14).

{¶53} When considering reasonable efforts, the issue is not whether there was anything more that JFS could have done, but whether the case planning and efforts were reasonable and diligent under the circumstances of this case. *In re*

*Leveck,* 2003-Ohio-1269, ¶ 10 (3d Dist.). There is no indication that there is anything more that JFS could have done to assist Father in this matter that would have jolted him into action to try and take custody of L.F., or at the very least visiting the local post office to start the process.

{¶54} In sum, we do not find that the trial court erred by determining that JFS engaged in reasonable efforts to support reunification in this matter. Therefore, Father's fourth assignment of error is overruled.

*Conclusion*

{¶55} Having found no error prejudicial to Father in the particulars assigned and argued, his assignments of error are overruled and the judgment of the Harding County Common Pleas Court, Juvenile Division, is affirmed.

***Judgment Affirmed***


**ZIMMERMAN and WILLAMOWSKI, J.J., concur.**

# <u>JUDGMENT ENTRY</u>

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

_____
Juergen A. Waldick, Judge

_____
William R. Zimmerman, Judge

_____
John R. Willamowski, Judge

DATED:
/jlm